```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WENDY JOHNSON                    :
                                 :       CIVIL ACTION
          Plaintiff,             :
                                 :
     v.                          :
                                 :       NO. 10-CV-2091
UPPER DARBY, PA., et al.,        :
                                 :
          Defendants.            :
```

**MEMORANDUM AND ORDER**

**Joyner, C.J.**                                    **September 26, 2011**

Before this Court are Defendants' Motion for Partial Summary Judgment (Doc. No. 16) and Plaintiff's Response in opposition thereto (Doc. No. 17). For the reasons set forth in this Memorandum, the Court grants the Motion for Partial Summary Judgment and dismisses, with prejudice, Upper Darby Township and Police Superintendent Michael Chitwood.

## I. Background

Plaintiff Wendy Johnson ("Plaintiff") filed a lawsuit alleging that on May 6, 2008 her civil rights were violated in the course of an arrest by Defendant Police Officer Steven Russo. This Court dismissed many of the claims alleged in Plaintiff's complaint. (Doc. No. 14) However, we preserved Plaintiff's claim for excessive force under § 1983 and the Fourth Amendment against Officer Russo, as well as Plaintiff's Monell claims against the Upper Darby Township ("Township") and against Superintendent

1

Michael Chitwood ("Chitwood") in his individual capacity. Defendants Superintendent Chitwood and Upper Darby Township now move for partial summary judgment, arguing that Plaintiff has not presented adequate evidence to sustain the remaining claims against them. We agree.

## II. Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law. Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In conducting our review, we view the record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Bowers v. Nat'l Collegiate Athletic Ass'n, 475 F.3d 524, 535 (3d Cir. 2007); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, the non-moving party cannot rely on "bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Podobnik v. U.S. Postal Serv., 409 F. 3d 584, 594 (3d Cir. 2005). When the non-moving party is the plaintiff, she must

"make a showing sufficient to establish the existence of [every] element essential to [her] case and on which [she] will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The plaintiff must "go beyond the pleadings and present evidence, through affidavits, depositions, or admission on file, to show that there is a genuine issue for trial. Gallashaw v. City of Phila., 774 F. Supp. 2d 713, 715 (E.D. Pa. 2011) (citing Celotex, 477 U.S. at 324).

### III. Discussion

**(A) Failure to Train Claim against Upper Darby Township**

"[T]he doctrine of *respondeat superior* is not a basis for rendering municipalities liable under § 1983 for the constitutional torts of their employees." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 663 (1978). A single unconstitutional act by a municipal official is insufficient to establish liability unless the plaintiff can demonstrate that it was caused by an existing unconstitutional policy or custom attributable to a municipal policymaker. City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-824 (1985); Baker v. Monroe Twp., 50 F.3d 1186, 1191 (3d Cir. 1995). To sustain a § 1983 claim for municipal liability, the plaintiff must identify the challenged policy, attribute it to the municipality, and show that the execution of the policy caused the injury suffered by the plaintiff. Losch v. Borough of Parkesburg, 736 F.2d 903, 910 (3d Cir. 1984). The existence of a

deficient municipal policy or custom must be "coupled with causation–i.e., that policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to their injury.'" Beck v. City of Pittsburgh, 89 F.3d 966, 971-72 (3d Cir. 1996) (quoting Bielevicz v. Dubinon, 915 F. 2d 845, 851 (3d Cir. 1990) (omitting footnote).

"The scope of failure to train liability is a narrow one." Brown v. Muhlenberg Twp., 269 F.3d 205, 215 (3d Cir. 2001). "This is especially true where...plaintiffs merely allege that a different training program than the one in place would have been more effective." Grazier v. City of Phila., 328 F.3d 120, 125 (3d Cir. 2003). The inadequacy of police training may serve as the basis for § 1983 liability only where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." City of Canton v. Harris, 489 U.S. 378, 390 (1989). When the challenged policy is the municipality's alleged failure to train, a plaintiff generally must show that responsible policymakers were aware of the scope of the problem and of preventions, "but either deliberately chose not to pursue these alternatives or acquiesced in a long-standing

policy or custom of inaction in this regard." <u>Simmons v. City of Phila.</u>, 947 F.2d 1042, 1064 (3d. Cir. 1991).

Plaintiff contends that the Township is liable for failing to properly train, supervise, and control their officers regarding excessive force, and in particular for failing to incorporate racial sensitivity and cultural awareness training into police protocols. (Compl., Doc. No. 1, ¶¶ 9, 13-19; Pl.'s Resp. Mem. 5, Doc. No. 17.) Plaintiff asserts that the alleged unprovoked physical assault against her, accompanied by verbally abusive language from Officer Russo,

> was an obvious result of Defendant Upper Darby Township's clear deliberate indifference in admittedly failing to provide racial sensitivity and cultural awareness training for its officers, which is a clear breach of the standard of <u>City of Canton v. Harris</u>, 489 U.S. 378, 389 (1989), which requires that the training of police officers must bear a 'relation to the tasks the particular officers must perform,' including coming into contact with African-Americans. (Pl.'s Resp., ¶5.).

Plaintiff further alleges that the Township has failed to properly discipline police officers who conceal, aid or abet violations of constitutional rights by fellow officers, which encouraged Officer Russo to violate Plaintiff's civil rights in the course of her arrest. (Compl., ¶10.) Finally, Plaintiff maintains that "but for" the Township and Chitwood's failure to adequately train or supervise in how to perform police duties in a minimally violent manner, Officer Russo would not have engaged

in the alleged misconduct and Plaintiff's civil rights would not have been violated. (Id., at ¶19.)

Plaintiff's claim against the Township cannot survive the summary judgment stage. She has provided only a "mere scintilla of evidence" in support of this position, although she bears the burden of persuasion at a trial. See Anderson, 477 U.S. at 252. Plaintiff alleges that the complained of conduct by the Upper Darby Police occurred "numerous and sundry times prior to May 6, 2008" and that "from these encounters the Township knew or should have known that its police officers were poorly and inadequately trained and supervised in how to execute their duties in a minimally forceful/violent manner." (Compl., ¶14) Even assuming that Plaintiff was assaulted by Officer Russo in the manner alleged in her complaint and as described in the affidavits of two civilian witnesses to the incident, Plaintiff has not produced any additional evidence or articulated specific facts to support her allegations that there is a rampant pattern of misconduct in the police department. We have before us only one isolated incident of excessive force by an Upper Darby Township police officer. This cannot serve as the sole evidentiary basis for finding an official policy or custom of inadequate training or supervision. See Tuttle, 471 U.S. at 821-24. There is nothing in the record that suggests the Township knew of incidents of

past police misconduct that, without intervention, were likely to result in future violations of constitutional rights.

Furthermore, there appears to be no dispute that Upper Darby police officers receive training and are bound by protocols that bear relation to the tasks they must perform, in particular coming into contact with people in the Township. Both Plaintiff and Defendants offer copies of the Upper Darby Township Police Department Written Directives as exhibits. The Written Directives provide specific discipline procedures for officers who use "obscene, abusive or insulting language to any citizen," establish clear guidelines on "the limits of officer authority and the use of lethal and non-lethal force in accordance with state and federal law," and outline procedures for receiving and investigating complaints of excessive force, as well as disciplinary consequences where complaints are substantiated. (Pl's Resp. Ex. D, Doc. No. 17; Defs.' Mot. Ex. A, Doc. No. 16.)

Plaintiff, however, argues these written directives are inadequate because there is no mention of racial sensitivity or cultural awareness. For our current purpose, we infer that the Upper Darby Police Department does not receive any training, direction or information in these particular issues. Even if this is so, Plaintiff has not provided any evidence, nor alluded to specific facts, to connect the absence of this particular type of training with the alleged misconduct she experienced. Despite

substantial time for discovery, she has not produced *any* evidence that suggests the current Upper Darby police protocols or systems of discipline are inadequate, or that the alleged assault by Officer Russo results from the absence of racial sensitivity and cultural awareness training. Plaintiff offers no statistical information. She does not provide affidavits or other evidence that the type of cultural awareness program she propones is effective, used outside of California or even still used today. She does not provide any evidence that other townships incorporate racial sensitivity training, that the Upper Darby police force has a pattern of excessive force complaints against racial or ethnic minorities, or that the Township was aware of but chose not to implement the cross-racial communication and conflict resolution strategies Plaintiff demands.

Apart from the allegations in the complaint, the affidavits of eye witnesses to Plaintiff's arrest, Plaintiff's medical records, and the Written Directives, all we have in the record is a 1992 training material—"Commission on Peace Officer Standards and Training: Guidelines for Law Enforcement's Design of Cultural Awareness Training Programs"—made and apparently used in California. (See Pl's Resp. Ex. E.) This is not enough to sustain a charge that the Township acted with "deliberate indifference" to Plaintiff's rights in the development and execution of its police training protocols. Moreover, even if it were, Plaintiff

has not shown that any deficiency on the part of the Township was the "moving force" behind her injuries." See Grazier, 328 F.3d at 125 (citing Harris, 489 U.S. at 389).

**(B) Individual Capacity Claim Against Defendant Chitwood**

Plaintiff's claim against Chitwood in his individual capacity cannot survive the summary judgment stage for similar reasons. A plaintiff may establish liability in a personal capacity claim by either (1) demonstrating that the defendant "personally participated in violating the constitutional rights of the plaintiffs, or directed others to violate those rights, or had knowledge of and acquiesced in the violations of [his] subordinates," or (2) showing that the defendant was a policymaker "who established or maintained policies, customs, or practices which directly caused the constitutional harm to the plaintiffs, and that [he] did so with deliberate indifference to the consequences." Boria v. Bowers, 2009 U.S. Dist. LEXIS 57005 (E.D. Pa. March 31, 2009) at *42-43 (quoting Judge Stengel's Order). See A.M. v. Luzerne County Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004).

"Allegations of participation or actual knowledge and acquiescence... must be made with appropriate particularity." Rode v. Dellarciprete, 845 F. 2d 1195, 1207 (3d Cir. 1988) (citations omitted). Plaintiff does not allege that Chitwood had a personal involvement in the assault during her arrest; there is

9

nothing in the record that suggests Chitwood was present at the scene or instructed Officer Russo to use excessive force against Plaintiff. Plaintiff has not provided any evidence that Chitwood knew of or acquiesced in civil rights violations to her or others by the police officers in his charge.

Instead, Plaintiff argues that Chitwood is liable in his personal capacity for the violations of her civil rights in the course of her arrest because Chitwood failed to include racial sensitivity and cultural awareness training in the Manual of Operations, which he alone creates and distributes to the Upper Darby Police Department. Plaintiff maintains that Chitwood's failure to include "such training created a substantial risk that an African-American living in Darby would be subjected to the type of racist assault perpetrated by Officer Russo." (Pl.'s Resp. Mem. 14.) Plaintiff further argues Chitwood made "no effort to supervise, manage or direct the activities of Officer Russo because he was deliberately and wilfully indifferent to [her] constitutional rights, as well as her personal well being." (Compl., ¶32) As discussed above, Plaintiff has not provided any evidence beyond the conclusory allegations in her complaint to sustain these charges.

## IV. Conclusion

Even in the light most favorable to the Plaintiff, there are no genuine issues of material fact from which a jury could

reasonably find in her favor on her claims against Superintendant Chitwood and the Upper Darby Township. Thus, this Court grants Defendants' Motion for Partial Summary Judgment.